## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

*Carver, et al.*,

        Plaintiffs,

vs.

No. 15-CV-10180 (JPO)(JLC)

*Bank of New York Mellon, et al.*,

        Defendants.

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated December 14, 2018 (the "Stipulation" or the "Settlement"), is made and entered into by and among Hedy Anselman, David Baumann in his capacity as Trustee of the Teamsters Employers Local 945 Pension Fund, Carl Carver, Dante A. Dano, Jr., Edward C. Day, Landol D. Fletcher, Timothy R. Garrett, Dana Kellen, Deborah Jean Kenny, Lisa Parker, Edwin Scheibel, and Daryl Watkins (collectively, "Named Plaintiffs"), in their respective capacities as participants, beneficiaries, and/or trustees of one or more of the seven employee benefit plans named in the First Amended Consolidated Class Action Complaint (Dkt. No. 93), on behalf of themselves and the Settlement Class (as defined below), by and through their counsel, and The Bank of New York Mellon and BNY Mellon, National Association (collectively, "BNYM" or "Defendants"), by and through their counsel, and is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

This Settlement is intended by Named Plaintiffs and Defendants (together, the "Parties") to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice the above-captioned action (the "Action") and all Released Claims (as defined below)

as against all Released Parties (as defined below), upon and subject to the terms and conditions stated in this Stipulation and final approval of the Court.

**WHEREAS:**

A.    All terms with initial capitalization shall have the meanings ascribed to them in Paragraph 1 below or as otherwise defined herein.

B.    On December 31, 2015, Carl Carver, Edward C. Day, Landol D. Fletcher, Deborah Jean Kenny, and Lisa Parker filed a Class Action Complaint captioned *Carver, et al. v. the Bank of New York Mellon, et al.* (Dkt. No. 1) in the Action. The Class Action Complaint asserted claims under Sections 404, 406, and 409 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and alleged that Defendants breached fiduciary duties and engaged in prohibited transactions in conducting foreign exchange transactions in connection with BNYM ADRs.

C.    On January 12, 2016, Robert E. Hartline filed a separate action against Defendants, captioned *Hartline v. The Bank of New York Mellon, et. al.*, Case No. 1:16-cv-00228-JPO, filed in the Southern District of New York and designated as related to the Action. On April 12, 2016, the Court consolidated the *Hartline* action with the Action and designated McTigue Law LLP and Ciresi Conlin LLP as Interim Co-Lead Counsel for the putative class in the Action.

D.    On May 3, 2016, Hedy Anselman, David Baumann, Carl Carver, Edward C. Day, Landol D. Fletcher, Timothy R. Garrett, Robert E. Hartline, Deborah Jean Kenny, Lisa Parker, and Daryl Watkins (collectively, the "*Carver* Plaintiffs") filed a Consolidated Amended Class Action Complaint against Defendants in the Action (Dkt. No. 54) based on the same conduct described in Paragraph B above. Specifically, the *Carver* Plaintiffs alleged that BNYM breached its duties of prudence and loyalty under Sections 404 and 409 of ERISA; engaged in self-

2

interested prohibited transactions in violation of Section 406(b) of ERISA; and caused the plans to engage in party-in-interest prohibited transactions in violation of Section 406(a) of ERISA.

E.     On June 2, 2016, Defendants moved to dismiss the Consolidated Amended Class Action Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and to strike the jury demand.  The *Carver* Plaintiffs opposed the motion on July 19, 2016.  Defendants filed a reply in further support of their motion on August 10, 2016.  Oral argument was held on Defendants' motion to dismiss on March 17, 2017.

F.     By Opinion and Order dated March 31, 2017, the Court denied BNYM's motion to dismiss the Consolidated Amended Class Action Complaint.  Specifically, the Court:  (i) denied BNYM's motion to dismiss plaintiffs' claims on the ground that plaintiffs lacked standing; (ii) denied BNYM's motion to dismiss plaintiffs' claims under Sections 404 and 409 of ERISA for breach of the fiduciary duties of prudence and loyalty; (iii) denied BNYM's motion to dismiss plaintiffs' claims that BNYM engaged in prohibited transactions under Sections 406(a) and (b) of ERISA; (iv) denied BNYM's motion to dismiss plaintiffs' claims as untimely to the extent they exceeded the three- or six-year statute of limitations periods under Section 413 of ERISA; and (v) granted BNYM's motion to strike plaintiffs' jury demand.

G.     Defendants answered the Consolidated Amended Class Action Complaint on April 21, 2017.

H.     On June 8, 2017, the *Carver* Plaintiffs and Dante A. Dano, Jr. filed a First Amended Consolidated Class Action Complaint against Defendants in the Action (Dkt. No. 93) based on the same conduct described in Paragraphs B and D above.  Defendants answered the First Amended Consolidated Class Action Complaint on June 22, 2017.

I.      Thereafter, the Parties commenced discovery, which included Defendants producing nearly 2.7 million pages of documents and over 136,000 Excel documents, Named Plaintiffs producing over 218,000 pages of documents, and the Parties taking 20 fact and four expert depositions and exchanging several rounds of expert reports.

J.      On November 29, 2017, in accordance with Rule 25(a) of the Federal Rules of Civil Procedure, Lead Plaintiffs' Counsel filed a suggestion of death for Robert E. Hartline and requested that Mr. Hartline be withdrawn as a plaintiff in the Action.

K.      On December 29, 2017, Edwin G. Scheibel filed a separate action against Defendants, captioned *Scheibel v. The Bank of New York Mellon, et al.*, No. 1-17-cv-10231, and designated it as related to the Action. On January 11, 2018, the Court accepted the *Scheibel* action as related to the Action. On April 16, 2018, the Court consolidated the *Scheibel* action with the Action and ordered that Interim Co-Lead Counsel would remain in that role in the consolidated Action.

L.      On February 12, 2018, before fact and expert discovery were concluded, Defendants moved for partial summary judgment on the application of the statute of limitations, seeking an order from the court granting summary judgment in favor of Defendants on the issue of fraudulent concealment and dismissing Named Plaintiffs' claims to the extent they are time-barred. Named Plaintiffs opposed the motion on March 7, 2018. Defendants filed a reply in further support of their motion on March 19, 2018.

M.      On May 15, 2018, Named Plaintiffs moved the Court for certification of the putative class pursuant to Rule 23(b)(1), or in the alternative pursuant to Rules 23(b)(2) and (b)(3), of the Federal Rules of Civil Procedure. Defendants opposed the motion on June 5, 2018. Named Plaintiffs filed a reply in further support of their motion on July 3, 2018.

N.     On August 24, 2018, Defendants filed a motion to preclude the proposed testimony of Named Plaintiffs' expert David F. DeRosa.  Named Plaintiffs opposed the motion on September 14, 2018.

O.     While discovery and motion practice were proceeding, the Parties began discussing the possibility of resolving the Action.  On March 22 and 23, 2018, the Parties participated in a two-day mediation session with the Honorable Layn R. Phillips and David Murphy of PhillipsADR.  The Parties engaged in a second mediation session with David Murphy of PhillipsADR on September 17, 2018.  Following these separate mediation sessions and adversarial, arm's-length negotiations spanning the course of several months, the Parties reached an agreement-in-principle to settle the Action and thereafter negotiated a term sheet (the "Term Sheet") setting forth the material terms of their agreement.  The Term Sheet was executed on September 26, 2018, and the Parties informed the Court of their agreement on September 27, 2018.

P.     This Stipulation constitutes a compromise of matters that are in dispute between Named Plaintiffs and Defendants.  Defendants are entering into this Stipulation to eliminate the uncertainty, burden, and expense of further protracted litigation.  Defendants deny any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of BNYM with respect to any claim or allegation of fault, liability, wrongdoing, or damages whatsoever, or any infirmity in the defenses that BNYM has, or could have, asserted.  BNYM expressly denies that Named Plaintiffs have asserted any valid claims as to it, and expressly denies any and all allegations of fault, liability, wrongdoing, or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Named Plaintiff of any infirmity in

5

any of the claims asserted in this Action, or an admission or concession that any of Defendants' defenses to liability had any merit. Based on their evaluation, Named Plaintiffs and Lead Plaintiffs' Counsel have determined that the Settlement set forth in this Stipulation is in the best interest of Named Plaintiffs and other Settlement Class Members. Moreover, each of the Parties recognizes and acknowledges that the Action has been initiated, filed, and prosecuted by Named Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate, and reasonable.

**NOW THEREFORE,** without any admission or concession whatsoever on the part of Named Plaintiffs or any Settlement Class Member regarding any lack of merit of the claims in the Action, and without any admission or concession whatsoever on the part of Defendants of any liability or wrongdoing or lack of merit of its defenses in the Action, it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and other conditions set forth herein, in consideration of the benefits flowing to the Parties from the Settlement, that the Action and all Released Claims (as defined below) shall be fully, finally, and forever compromised, settled, released, resolved, discharged, and dismissed with prejudice against the Released Parties (as defined below), upon and subject to the following terms and conditions:

## DEFINITIONS

1.     As used in this Stipulation and any exhibits attached to this Stipulation and made a part of it, the following terms shall have the meanings specified below:

6

(a)    "Action" means the action captioned *Carver, et al. v. The Bank of New York Mellon, et al.*, No. 15-cv-10180-JPO-JLC (S.D.N.Y.).

(b)    "ADR" means an American Depositary Share, also commonly referred to as an American Depositary Receipt.

(c)    "Authorized Recipient" means a Settlement Entity that is approved for payment from the Net Settlement Fund.

(d)    "BNYM ADR" means an ADR for which The Bank of New York Mellon acted as the depositary.

(e)    "Claim" means a Settlement Entity's potential claim to payment from the Net Settlement Fund, including any Settlement Class Member's potential claim on behalf of a Settlement Entity to payment from the Net Settlement Fund.

(f)    "Claim Amount" means the amount to be paid, in accordance with the Plan of Allocation, out of the Net Settlement Fund to each Settlement Entity that is determined to be an Authorized Recipient.

(g)    "Claim Form" means the form, substantially in the form attached to this Stipulation as Exhibit A-3, which an authorized representative of a Potential Class Entity must complete and submit to the Claims Administrator through the Settlement Website should that authorized representative's associated Potential Class Entity seek to receive a payment from the Net Settlement Fund. An authorized representative of an Identified Class Entity may also submit a Claim Form to correct or supplement information provided with the Validation Letter received by that Identified Class Entity and in the

7

pre-populated Claim Form for that Identified Class Entity available on the Settlement Website.

(h)    "Claimant" means a Settlement Entity that is an Identified Class Entity or that, through its authorized representative, submits a Claim Form to the Claims Administrator seeking to be eligible to receive a payment from the Net Settlement Fund.

(i)    "Claims Administrator" means Analytics Consulting, LLC, the firm retained by Lead Plaintiffs' Counsel on behalf of the Settlement Class, subject to approval of the Court, to provide all notices approved by the Court to Identified Class Entities and Potential Class Entities and to administer the Settlement.

(j)    "Complaint" means the First Amended Consolidated Class Action Complaint filed with the Court on June 8, 2017, together with the complaint filed on December 29, 2017 in the case captioned *Scheibel v. The Bank of New York Mellon, et al.*, No. 17-cv-10231, and subsequently consolidated with the Action.

(k)    "Contract Action" means the consolidated actions captioned *In re: The Bank of New York Mellon ADR FX Litigation*, No. 16-cv-00212-JPO-JLC (S.D.N.Y.).

(l)    "Contract Settlement" means the Stipulation and Agreement of Settlement in the Contract Action to be filed with the Court.

(m)    "Court" means the United States District Court for the Southern District of New York.

(n)    "Defendants" or "BNYM" means The Bank of New York Mellon and BNY Mellon, National Association.

8

(o)     "Defendants' Counsel" means the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(p)     "Distribution Order" means the order entered by the Court authorizing and directing distribution of the Net Settlement Fund, in whole or in part, to Authorized Recipients upon or after the occurrence of the Effective Date.

(q)     "Effective Date" means the first date by which all of the conditions set forth in Paragraph 36 below have occurred.

(r)     "ERISA Entity" means an ERISA plan and any trust, pooled account, collective investment vehicle, or group insurance arrangement that files a Form 5500 annual return/report as a Direct Filing Entity (DFE) in accordance with the DFE Filing Requirements, such as a group trust, master trust investment account (MTIA), common/collective trust (CCT), pooled separate account (PSA), 103-12 investment entity (102-12 IE), group insurance arrangement (GSA), or collective investment vehicle that held plan assets as defined by the U.S. Department of Labor "Instructions for Form 5500, Annual Return/Report of Employee Benefit Plan."

(s)     "Escrow Account" means an interest-bearing account maintained by the Escrow Agent, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Plaintiffs' Counsel.

(t)     "Escrow Agent" means Alerus Financial, N.A.

(u)     "Final," when referring to the Order and Final Judgment, means: (1) the expiration of any time for appeal or review of the Order and Final Judgment or (2) if any appeal is filed and not dismissed, after the Order and Final Judgment is upheld on appeal

in all material respects and is no longer subject to review upon appeal or review by *certiorari* or otherwise, and the time for any petition for reargument, appeal, or review by *certiorari* or otherwise, has expired. Any disputes or appeals relating solely to the amount, payment, or allocation of attorneys' fees and Litigation Expenses or the Plan of Allocation shall have no effect on finality for purposes of determining the date on which the Order and Final Judgment becomes Final.

(v)     "Final Approval Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(w)     "Identified Class Entity" means an ERISA Entity that has been identified as a beneficial owner of at least one BNYM ADR during the Settlement Class Period either through structured financial data or through documentation regarding the Named Plaintiffs' ERISA plans produced in discovery in this Action.

(x)     "Lead Plaintiffs' Counsel" means the law firms of Ciresi Conlin LLP and McTigue Law LLP.

(y)     "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Plaintiffs' Counsel and other plaintiffs' counsel in connection with commencing and prosecuting the Action and may also include the costs and expenses of Named Plaintiffs directly related to their functions as named plaintiffs in the Action (i.e., "Service Awards") for which Lead Plaintiffs' Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

(z)     "Named Plaintiffs" means Hedy Anselman, David Baumann, Carl Carver, Dante A. Dano, Jr., Edward C. Day, Landol D. Fletcher, Timothy R. Garrett, Dana

10

Kellen, Deborah Jean Kenny, Lisa Parker, Edwin Scheibel, and Daryl Watkins, in their respective capacities as participants, beneficiaries, and/or trustees of one or more of the seven employee benefit plans named in the First Amended Consolidated Class Action Complaint, and as lead plaintiffs and class representatives in this Action as applicable.

(aa)   "Net Settlement Fund" means the Settlement Fund less (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court.

(bb)   "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, which will be posted on the Settlement Website.

(cc)   "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Plaintiffs' Counsel in connection with providing notice to the Settlement Class and administering the Settlement, as more fully described in Paragraph 14 below.

(dd)   "Order and Final Judgment" means the order of final judgment to be entered in the Action, substantially in the form attached hereto as Exhibit B.

(ee)   "Parties" means Named Plaintiffs, on behalf of themselves and each Settlement Class Member, and Defendants.

(ff)   "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative,

11

trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

(gg) "Plan of Allocation" means the proposed plan for allocating the Net Settlement Fund to Authorized Recipients, which, subject to approval of the Court, shall be substantially in the form described in the Notice.

(hh) "Postcard Notice" means the notice, substantially in the form attached hereto as Exhibit A-5, to be mailed to each Potential Class Entity as set forth in the Preliminary Approval Order.

(ii) "Potential Class Entity" means an ERISA Entity that is not an Identified Class Entity but that the Claims Administrator and Lead Plaintiffs' Counsel can identify as an ERISA Entity through the U.S. Department of Labor's most recent database of Form 5500s.

(jj) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court, preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

(kk) "Publication Notice" means the notice, substantially in the form attached hereto as Exhibit A-4, to be published as set forth in the Preliminary Approval Order.

(ll) "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown (i.e., "Unknown Claims" as defined below), asserted or unasserted, whether arising under federal, state, common, or foreign

12

law, whether in connection with the applicable deposit agreements or otherwise, whether class, derivative, or individual in nature, that (a) were or could have been asserted in the Action, or in any other forum, that arise out of, are based upon, or relate in any way to the allegations set forth in any complaint or other pleading filed in the Action or (b) arise from, are based upon, or relate in any way to the conversion of foreign currency in connection with any and all ADRs for which BNYM acted as the depositary at any time during the Settlement Class Period, *provided, however*, that the Released Claims shall not include any claim for breach of a BNYM deposit agreement asserted by or on behalf of a Settlement Entity in the Contract Action that is within the scope of the claims to be released in the Contract Settlement. This release incorporates a waiver by Releasors of any limitation on the scope of the release that would otherwise exist under California Civil Law § 1542. "Released Claims" do not include claims arising out of, based upon, relating to, concerning, or in connection with the interpretation or enforcement of the terms of the Settlement.

(mm) "Released Parties" means (a) BNYM, its predecessors, successors, and assigns, its direct and indirect parents, subsidiaries, and affiliates, and its respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of BNYM), attorneys, and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing; (b) any custodians or subcustodians appointed by BNYM in its capacity as depositary with respect to any of the ADRs subject to this Settlement, solely in their capacity as such, and only with respect to the period that BNYM served as depositary, transfer agent, registrar, or dividend disbursing agent in connection with such ADRs; and

(c) the issuers of any of the foreign securities deposited with BNYM in relation to the BNYM ADRs subject to this Settlement, solely in their capacity as such, solely in relation to any conduct alleged in the Complaint, and only with respect to the period that BNYM served as depositary, transfer agent, registrar, or dividend disbursing agent in connection with such ADRs.

(nn) "Releases" means the releases set forth in Paragraph 5 of this Stipulation.

(oo) "Releasors" means Named Plaintiffs and each and every Settlement Class Member, on behalf of themselves and each Settlement Entity of which they are a participant, beneficiary, trustee, or fiduciary, and each of their respective predecessors, successors, beneficiaries, and assigns, direct and indirect parents, subsidiaries, and affiliates, their current and former sponsors, administrators, officers, directors, named fiduciaries, trustees, investment managers, investment advisors, employees, agents, and legal representatives, and the predecessors, successors, heirs, executors, administrators, beneficiaries, and assigns of each of the foregoing.

(pp) "Settlement" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(qq) "Settlement Amount" means twelve million five hundred thousand U.S. Dollars ($12,500,000.00) to be paid by or on behalf of the Defendants into the Escrow Account.

(rr) "Settlement Class" means all participants, beneficiaries, trustees, and fiduciaries of a Settlement Entity in their capacity as such.

14

(ss) "Settlement Entity" means any ERISA Entity that held, directly or indirectly, BNYM ADRs for which Defendants (or their affiliates or predecessors in interest), in their capacity as an ADR depositary, provided foreign exchange transactional services, at any time during the Settlement Class Period.

(tt) "Settlement Class Member" means any member of the Settlement Class.

(uu) "Settlement Class Period" means the period from January 1, 1997 to the date of the Court's Preliminary Approval Order.

(vv) "Settlement Fund" means the Settlement Amount deposited in the Escrow Account plus any interest earned thereon.

(ww) "Settlement Website" means the website to be created and maintained by the Claims Administrator for purposes of administering the Settlement.

(xx) "Stipulation" means this Stipulation and Agreement of Settlement.

(yy) "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys and/or accountants and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

(zz) "Taxes" means any taxes due and payable with respect to the income earned by the Settlement Fund, including any interest or penalties thereon.

(aaa) "Term Sheet" means the confidential term sheet memorializing the Parties' agreement in principle to settle the Action, executed on September 26, 2018.

(bbb) "Unknown Claims" means any and all claims that any Named Plaintiff or any other Settlement Class Member or any Settlement Entity does not know or suspect to

exist in his, her, or its favor at the time of the release of the Released Claims, which if known to him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including but not limited to his, her, or its decision to object or not to object to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, each of the Named Plaintiffs shall expressly waive, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived and relinquished any and all provisions, rights, or benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge, and each of the Settlement Class Members and Settlement Entities shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

(ccc) "Validation Letter" means the letter, substantially in the form attached hereto as Exhibit A-2, to be mailed to Identified Class Entities setting forth information regarding their BNYM ADR holdings during the Settlement Class Period.

## **PRELIMINARY APPROVAL OF SETTLEMENT**

2. Promptly upon execution of this Stipulation, Named Plaintiffs will move for preliminary approval of the Settlement and the scheduling of the Final Approval Hearing, which motion shall be unopposed by Defendants. Concurrently with the motion for preliminary

16

approval, Named Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A. The Parties shall request that the Final Approval Hearing be scheduled for a date at least 135 days from the date of the Court's entry of the Preliminary Approval Order.

## CERTIFICATION OF THE SETTLEMENT CLASS

3.      Solely for purposes of effectuating the Settlement and for no other purpose, the Parties stipulate and agree to (i) certification of the Settlement Class pursuant to Rules 23(a) and 23(b)(1) of the Federal Rules of Civil Procedure; (ii) appointment of Named Plaintiffs as representatives for the Settlement Class; and (iii) appointment of Lead Plaintiffs' Counsel as counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. The sole injunctive relief to be awarded to the Settlement Class under the Settlement shall be disgorgement of the Net Settlement Fund pursuant to the plan of allocation approved by the Court. If the Court declines to certify the Settlement Class under Rule 23(b)(1), that event would be a basis for termination of the Settlement under Paragraph 33 below.

## RELEASE OF CLAIMS

4.      The obligations incurred pursuant to this Stipulation are in consideration of (i) the full and final disposition of the Action as against Defendants; and (ii) the Releases provided for herein.

5.      Pursuant to the Order and Final Judgment, without further action by anyone, upon the Effective Date of the Settlement, Releasors shall be deemed to have, and by operation of law and of the Order and Final Judgment shall have, finally, fully, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim against

17

any of the Released Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Claims against any of the Released Parties.

6.    Notwithstanding the foregoing Paragraph 5, nothing in the Order and Final Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Order and Final Judgment.

## THE SETTLEMENT CONSIDERATION

7.    In consideration of the terms of the Settlement, Defendants shall pay or cause to be paid the Settlement Amount into the Escrow Account no later than ten (10) days after the later to occur of: (i) the Court's entry of a Preliminary Approval Order; or (ii) Lead Plaintiffs' Counsel's provision of all paperwork reasonably requested by Defendants to process the payment (including but not limited to wire instructions and a W-9).

8.    Other than the obligation of Defendants to pay or cause to be paid the Settlement Amount into the Escrow Account as provided for herein, Defendants shall have no responsibility for any other costs, including, without limitation, any attorneys' fees, Litigation Expenses, Notice and Administration Costs, Taxes, and Tax Expenses, pursuant to this Stipulation. The interest earned on the Settlement Fund while on deposit in the Escrow Account shall be for the benefit of the Settlement Class.

9.    This Settlement is not a claims-made settlement. There will be no reversion of settlement funds to Defendants if the Settlement becomes Final. As of the Effective Date, neither the Defendants nor any other Person who paid any portion of the funds in the Escrow Account shall have any right to the return of the Net Settlement Fund or any portion thereof, irrespective of the number of Claims, the collective amount of losses of Authorized Recipients,

the percentage of recovery, or the amounts to be paid to Authorized Recipients from the Net Settlement Fund.

## USE OF THE SETTLEMENT FUND

10. The Settlement Fund shall be used to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Settlement Fund (i.e., the Net Settlement Fund) shall be distributed to Authorized Recipients. As provided below, after (i) the Order and Final Judgment becomes Final, and (ii) the Court enters the Distribution Order, the Net Settlement Fund will be distributed to Authorized Recipients in accordance with the terms of such Distribution Order and the plan of allocation approved by the Court.

11. Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. At the written instruction of Lead Plaintiffs' Counsel, the Escrow Agent shall invest the Settlement Amount exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

12. The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that Lead Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 13 below. Lead Plaintiffs' Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund. Upon written request, Defendants will provide to Lead Plaintiffs' Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-l(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

13. All Taxes and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be timely paid out of the Escrow Account without prior order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous Paragraph 12 and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided

20

herein. The Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Stipulation. BNYM shall not have any liability or responsibility for any such Taxes or Tax Expenses, and shall have no responsibility or liability for the acts or omissions of Lead Plaintiffs' Counsel or their agents, as described herein.

14. Prior to the Effective Date, Lead Plaintiffs' Counsel may pay from the Escrow Account actually incurred Notice and Administration Costs without further order of the Court or approval of Defendants. Such costs and expenses shall include, without limitation, the actual costs of publication, printing, and mailing the Postcard Notice, Validation Letter, and Publication Notice; creation and maintenance of a Settlement Website on which Notice and Plan of Allocation and other information regarding the Settlement will be posted and through which Potential Class Entities and Identified Class Entities may submit Claim Forms; the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with searching for Settlement Entities and Settlement Class Members, reviewing Claims, and processing Claim Forms; and the reasonable fees, if any, of the Escrow Agent for the Settlement Fund. All Notice and Administration Costs shall be paid out of the Settlement Amount and in no circumstances shall Defendants be required to pay any amount above the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

15. Lead Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees to be paid from the Settlement Fund. Lead Plaintiffs' Counsel also will apply to the Court for reimbursement of Litigation Expenses (which may include Service Awards to Named Plaintiffs) to be paid from the Settlement Fund. Lead Plaintiffs' Counsel's application for an award of

attorneys' fees and/or expenses is not the subject of any agreement between Defendants and Named Plaintiffs other than what is set forth in this Stipulation. Defendants shall take no position with respect to any award of attorneys' fees or expenses to plaintiffs' counsel, including Service Awards.

16.    Attorneys' fees and expenses of Lead Plaintiffs' Counsel, and Service Awards, as awarded by the Court, shall be paid from the Escrow Account immediately upon the Court's award of such attorneys' fees and expenses by the Court, notwithstanding any objections or appeals of the Settlement or the fee and expense award. If the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or expenses is reduced or reversed, Lead Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than twenty (20) days after: (a) receiving notice of a termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees or expenses has become Final. Lead Plaintiffs' Counsel shall allocate the attorneys' fees awarded among plaintiffs' counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the Action. All of Lead Plaintiffs' Counsel's attorneys' fees and expenses shall be paid out of the Settlement Fund and in no circumstances shall BNYM be required to pay any amount in addition to the Settlement Amount. BNYM shall have no responsibility for, and no liability whatsoever with respect to, any award of attorneys' fees and expenses to Lead Plaintiffs' Counsel or any Service Award, or the allocation of any such award.

17.    The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including Service Awards). Any order or proceedings relating to such

motion, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims.

18. For avoidance of doubt, under no circumstances shall Defendants have any responsibility for the payment of plaintiffs' attorneys' fees under 29 U.S.C. § 1132(g)(1) or otherwise.

## THE PROPOSED PLAN OF ALLOCATION

19. Appended to the Notice attached hereto as Exhibit A-1 is the Plan of Allocation proposed by Named Plaintiffs, subject to Court approval. Named Plaintiffs will consult with Defendants in good faith prior to the time the Plan of Allocation is finalized; however, the consent of Defendants to the Plan of Allocation shall not be required, and Defendants shall not object to the Plan of Allocation.

20. The allocation of the Net Settlement Fund among Authorized Recipients is a matter separate and apart from the proposed Settlement between the Parties. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. It is not a condition of the Settlement that any particular plan of allocation be approved by the Court. Named Plaintiffs and Lead Plaintiffs' Counsel may not cancel or terminate the Settlement (or this Stipulation) based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action. There shall be no distribution of any of the Settlement Fund to any Settlement Entity until a plan of allocation is approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired.

23

21. No Person shall have any claim against Named Plaintiffs, Lead Plaintiffs' Counsel, Named Plaintiffs' damages expert, Defendants, Defendants' Counsel, any of the Released Parties, or the Claims Administrator or other agent designated by Lead Plaintiffs' Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Named Plaintiffs, Defendants, and their respective counsel, and all other Released Parties, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim; the nonperformance of the Claims Administrator; the payment or withholding of Taxes and Tax Expenses; or any losses incurred in connection therewith.

## NOTICE AND SETTLEMENT ADMINISTRATION

22. As part of the Preliminary Approval Order, Named Plaintiffs shall seek appointment of the Claims Administrator. The Claims Administrator shall discharge its duties under Lead Plaintiffs' Counsel's supervision and subject to the jurisdiction of the Court. Lead Plaintiffs' Counsel shall be solely responsible, subject to Court approval, for notice, administration, and allocation of the Settlement Fund among Settlement Entities. BNYM and the other Released Parties shall have no responsibility whatsoever for the selection of the Claims Administrator, the administration of the Settlement, or the disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any Person, including, but not limited to, the Settlement Entities and the Settlement Class Members, in connection with the foregoing.

23. In accordance with the Preliminary Approval Order, Lead Plaintiffs' Counsel shall cause the Claims Administrator to mail Postcard Notice and notice of the Notice and Claim Form available on the Settlement Website to all Potential Class Entities, and to mail the Validation

Letter and notice of the Notice and Claim Form available on the Settlement Website to all Identified Class Entities. Lead Plaintiffs' Counsel shall also cause the Claims Administrator to publish the Publication Notice in accordance with the terms of the Preliminary Approval Order or in whatever other form or manner might be ordered by the Court. In accordance with the Preliminary Approval Order, Identified Class Entities may either participate in the Settlement and receive a payment from the Net Settlement Fund in accordance with the information indicated in the Validation Letter and on the pre-populated Claim Form available on the Settlement Website, or may submit a corrected or supplemented Claim Form with supporting documentation through the Settlement Website, which corrected or supplemented information will be evaluated by the Claims Administrator in the same manner as a Claim Form submitted by a Potential Class Entity. Potential Class Entities will be required to submit a valid Claim Form with supporting documentation in order to be eligible to participate in the Settlement and receive a payment from the Net Settlement Fund. The Claims Administrator will calculate all Claims in accordance with the Plan of Allocation proposed by Named Plaintiffs and approved by the Court, or according to such other plan of allocation as the Court approves.

24. For purposes of determining the extent, if any, to which a Potential Class Entity and such Settlement Entity's authorized representative shall be entitled to be treated as an Authorized Recipient, the following conditions shall apply:

a. Each Potential Class Entity shall be required to complete and submit through the Settlement Website a Claim Form, substantially in the form attached hereto as Exhibit A-3, supported by such documents as are designated therein, including proof of Claimant's BNYM ADR holdings or such other documents or proof as the Claims Administrator or Lead Plaintiffs' Counsel, in their discretion, may deem acceptable;

b. All Claims Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Potential Class Entity that fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Potential Class Entity's Claim Form is accepted), but such Potential Class Entity and its associated Settlement Class Members shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Parties with respect to any Released Claim. A Claim Form shall be deemed submitted on the date it was submitted electronically through the Settlement Website; and

c. Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation approved by the Court the extent, if any, to which each Claim Form shall be allowed. Claim Forms that do not meet the submission requirements may be rejected.

d. The requirements set forth above shall also apply to Identified Class Entities, to the extent that they seek to receive a payment from the Net Settlement Fund that is in addition to the payment they would be entitled to receive based on the information in their respective Validation Letters and in their pre-populated Claim Forms.

25. Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator shall notify, in a timely fashion and in

26

writing, all Claimants whose Claim Forms the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim Form is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements set forth in this Paragraph 25.  If any Claimant whose Claim Form has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of the mailing of the notice required by this paragraph, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation and requesting a review thereof by the Court.

26.  Each Settlement Entity and its associated Settlement Class Members shall be deemed to have submitted to the jurisdiction of the Court with respect to such Settlement Entity's Claim, including, but not limited to, the Releases provided for in the Order and Final Judgment, and the Claim will be subject to investigation and discovery that shall be limited to that Claimant's status as a Settlement Entity or an authorized representative of a Settlement Entity and the validity and amount of such Claimant's Claim.  No discovery shall be allowed on the merits of the Action or the Settlement, nor shall any discovery of Defendants be allowed, in connection with the processing of Claims.

27.  The Claims Administrator will calculate all Claims in accordance with the Plan of Allocation as proposed by Named Plaintiffs and approved by the Court, or according to such other plan of allocation as the Court approves.

28.  Lead Plaintiffs' Counsel will apply to the Court, with reasonable notice to BNYM, for a Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of Claims; (ii) approving payment of any

outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Recipients.

29. Payment pursuant to the Distribution Order from the Net Settlement Fund shall be final and conclusive against any and all Settlement Entities and Settlement Class Members. All Settlement Entities whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but such Settlement Entities and their associated Settlement Class Members shall be bound in all other respects by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment and the Releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Parties concerning any and all of the Released Claims.

30. Any Settlement Entity that does not submit such documentation as may be required to become an Authorized Recipient will not be entitled to receive a payment from the Net Settlement Fund but, along with such Settlement Entity's associated Settlement Class Members, will be bound in all other respects by all terms of this Stipulation and Settlement, including the terms of the Order and Final Judgment and the Releases provided for herein and therein.

31. All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## TERMS OF THE ORDER AND FINAL JUDGMENT

32.  If the Settlement contemplated by this Stipulation is approved by the Court, the Parties shall request that the Court enter an Order and Final Judgment, substantially in the form annexed hereto as Exhibit B or providing for substantially the same relief, including, among other things, the Releases provided for herein.

## WAIVER OR TERMINATION

33.  Named Plaintiffs and Defendants each shall have the right to terminate the Settlement in its entirety by providing written notice of their election to do so to the other within fourteen (14) calendar days of:  (i) the Court's final refusal to enter the Preliminary Approval Order in any material respect (including certification of the Settlement Class for purposes of the Settlement); (ii) the Court's final refusal to enter the Order and Final Judgment in any material respect (including certification of the Settlement Class for purposes of the Settlement); or (iii) the date upon which the Order and Final Judgment is vacated, modified, or reversed in any material respect by a final order of the United States Court of Appeals or the Supreme Court of the United States.  For the avoidance of doubt, Named Plaintiffs shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting an application for attorney's fees or Litigation Expenses or plan of allocation.  In the event the Settlement is terminated, the provisions of Paragraphs 12, 13, 14, 33, 34, 35, 38, and 48 shall survive termination.

34.  Except as otherwise provided herein, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, Named Plaintiffs and Defendants shall be deemed to have reverted *nunc pro tunc* to their respective litigation positions in the Action as of the date of the Term Sheet on September 26, 2018, and, except as otherwise expressly provided, Named Plaintiffs and Defendants shall proceed in all respects as if this

Stipulation and any related orders had not been entered and without any prejudice in any way from the negotiation, fact, or terms of the Settlement. If the Settlement is terminated, the facts and terms of the Settlement shall not be admissible in any trial or otherwise used against any Party.

35. Except as otherwise provided herein, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, the balance of the Settlement Fund including interest accrued thereon, less any Notice and Administration Costs paid or incurred and less any Taxes and Tax Expenses paid, incurred, or owing, shall be refunded to BNYM as instructed by BNYM within twenty (20) days after joint written notification of termination is sent by Lead Plaintiffs' Counsel and Defendant's Counsel to the Escrow Agent.

## EFFECTIVE DATE OF SETTLEMENT

36. The Effective Date of the Settlement shall be the first date by which all of the following shall have occurred:

a. The Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by Paragraph 2 above;

b. The Settlement Amount has been paid into the Escrow Account in accordance with the provisions of Paragraph 7 above;

c. Neither Named Plaintiffs nor Defendants have exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

d. The Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure and following the period set forth for notice under the Class Action Fairness Act;

e. The Court has entered the Order and Final Judgment, substantially in the form annexed hereto as Exhibit B, or providing substantially the same relief; and

f. The Order and Final Judgment has become Final.

37. Upon the occurrence of the Effective Date, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

## NO ADMISSION OF WRONGDOING

38. Except as provided in Paragraph 39 below, this Stipulation, whether or not consummated, and any negotiations, proceedings, or agreements relating to this Stipulation, the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not be offered or received against any or all of the Released Parties for any purpose, and in particular:

a. do not constitute, and shall not be offered or received against Defendants or the other Released Parties as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by Defendants or the Released Parties with respect to the truth of any fact alleged by Named Plaintiffs or any other Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation or other proceeding, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Defendants or the other Released Parties;

b. do not constitute, and shall not be offered or received (i) against Defendants or the other Released Parties as evidence of, a presumption, concession, or admission of any fault, misstatement, or omission with respect to any statement or written document approved or made

31

by Defendants or the Released Parties, or (ii) against Defendants, the Released Parties, Named Plaintiffs, or any other Settlement Class Member as evidence of, any infirmity in the claims or defenses that have been or could have been asserted in the Action;

c. do not constitute, and shall not be construed as or received against Defendants or the other Released Parties as evidence of, a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against Defendants or the Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

d. do not constitute, and shall not be construed against Defendant or the other Released Parties as, an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

e. do not constitute, and shall not be construed as or received in evidence as, an admission, concession, or presumption against Named Plaintiffs or any other Settlement Class Member that any of their claims are without merit or infirm, that a class should not be certified, or that damages recoverable under the complaints filed in the Action would not have exceeded the Settlement Amount.

39. The Parties, including Released Parties, may file or refer to this Stipulation, the Order and Final Judgment, and/or any Claim Form submitted on behalf of a Settlement Entity to effectuate the liability protection granted thereunder, including, without limitation, to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Parties, including Released Parties, may file this

32

Stipulation and/or the Order and Final Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Order and Final Judgment; however, in no event shall any Party or any Released Party use in the litigation of this Action, or any other action or proceeding, for any purposes other than the implementation of the Settlement, information disclosed by any Party during and for the purpose of the negotiation and implementation of the Settlement. All Released Parties submit to the jurisdiction of the Court for purpose of implementing and enforcing the Settlement.

## COOPERATION

40. The Parties and their respective counsel agree to work together in good faith to implement the Settlement and obtain the Preliminary Approval Order and the Order and Final Judgment. In the event the Court directs Named Plaintiffs to seek information respecting the identification of any Settlement Entity from The Depository Trust Company ("DTC") or its affiliates as a condition of Settlement approval, Defendants agree to cooperate in good faith with Named Plaintiffs to facilitate an introduction to DTC.

## MISCELLANEOUS PROVISIONS

41. The Parties agree that no Party was or is a "prevailing party" in the Action.

42. All of the exhibits attached to this Stipulation, except any Plan of Allocation, to the extent incorporated in those exhibits, are material and integral parts hereof and are fully incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall prevail.

43. This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing that specifically references the Stipulation and that is signed by all of the undersigned Parties to the Stipulation (or their successors in interest).

44. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

45. Defendants shall be responsible for service of any notice for which they might be responsible pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, including all costs associated with giving such notice.

46. Named Plaintiffs and Lead Plaintiffs' Counsel represent that none of Named Plaintiffs' claims or causes of action referred to in this Action or this Stipulation have been assigned, encumbered, or in any manner transferred in whole or in part.

47. Each Defendant individually represents that, as to the payments made or to be made by or on behalf of it at the time of entering into this Stipulation and at the time of such payment that it made or caused or will make or cause to be made pursuant to the terms above, it was not insolvent, nor will the payment required to be made by or on behalf of it render it insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code, including but not limited to Sections 101 and 547 thereof. This representation is made by each Defendant and not by its counsel.

48. Neither this Stipulation, the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of Defendants or the other Released Parties; or (ii) is or may be

deemed to be or may be used as an admission or evidence of any fault or omission of Defendants or the other Released Parties in any civil, criminal, or administrative proceeding in any court, any arbitration proceeding, or any inquiry, investigation, proceeding or other action conducted by or before any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Stipulation, the Settlement, or the Order and Final Judgment.

49. The Parties warrant that, in entering into this Settlement, they relied solely upon their own knowledge and investigation, and not upon any promise, representation, warranty, or other statement by any other Party not expressly contained in this Stipulation or any of the incorporated Settlement documents.

50. The Parties agree that the terms of the Settlement were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel. Moreover, the Settlement is intended to be a final and complete resolution of the Parties' disputes in the Action. The Parties further agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, the Parties agree not to assert any claim under Rule 11, or any similar law, rule, or regulation, that the Action was brought or defended in bad faith or without a reasonable basis.

51. The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

52. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the

purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Plaintiffs' Counsel and Service Awards to Named Plaintiffs and enforcing the terms of this Stipulation.

53.    This Stipulation and its exhibits constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Stipulation and its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

54.    This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.

55.    The Parties and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation.  In the event that there are objectors to the Settlement, the Parties shall confer concerning the most effective manner in which to address any such objections and will attempt in good faith to agree on a strategy for resolving such objections.

56.    Each counsel signing this Stipulation represents that such counsel has authority to sign this Stipulation on behalf of Named Plaintiffs or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

57.   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including any and all Released Parties, and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.

58.   Notices required by this Stipulation shall be submitted, unless otherwise provided, either by any form of overnight mail, e-mail, facsimile, or in person to each of the signatories below.

59.   The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

60.   This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

61.   The Parties agree that once this Stipulation is filed with the Court, any press releases or other public statements by any of the Parties regarding the Action or the Settlement shall not substantially deviate from words to the effect that the Parties have reached a mutually acceptable resolution by way of a mediated settlement and that the Parties are satisfied with this resolution, provided, however, that BNYM and Named Plaintiffs may make such statements as they reasonably believe in good faith are required by law, applicable regulations, or rules, or this Settlement, including notice to the Settlement Class, all papers necessary to seek preliminary and

final approval of the Settlement, approval of the plan of allocation, and approval of Named Plaintiffs' counsel's fee and expense application, and BNYM may make such disclosure in its SEC filings and to its regulators, and provide such information to its insurers, as it deems prudent and appropriate in its sole discretion.

Dated: December 14, 2018

CIRESI CONLIN LLP

By:

Michael V. Ciresi (*pro hac vice*)
Jan M. Conlin (*pro hac vice*)
Heather M. McElroy (*pro hac vice*)
Barry M. Landy (*pro hac vice*)
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Telephone: (612) 361-8200
mvc@ciresiconlin.com
jmc@ciresiconlin.com
hmm@ciresiconlin.com
bml@ciresiconlin.com

MCTIGUE LAW LLP

By:

J. Brian McTigue (*pro hac vice*)
Regina M. Markey (*pro hac vice*)
4530 Wisconsin Ave., NW, Suite 300
Washington, DC 20016
Telephone: (202) 364-6900
bmctigue@mctiguelaw.com
rmarkey@mctiguelaw.com

*Attorneys for Named Plaintiffs and Interim Co-Lead Counsel for the Putative Class*

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: _____

Elizabeth M. Sacksteder
William A. Clareman
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3505
esacksteder@paulweiss.com
wclareman@paulweiss.com

*Attorneys for Defendants*